IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DOUGLAS EARL McCASLAND,

    Petitioner,

v.                                                              No. 1:15-cv-02700-JDB-egb

UNITED STATES OF AMERICA,

    Respondent.


ORDER DISMISSING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

    Petitioner, Douglas Earl McCasland, has filed, through counsel, a motion to vacate, set aside, or correct his sentence (the "Petition") pursuant to 28 U.S.C. § 2255.[1] (Docket Entry ("D.E.") 1.) For the following reasons, the Petition is DISMISSED.

BACKGROUND

    In July 2013, a federal grand jury sitting in the Western District of Tennessee returned a thirteen-count indictment charging McCasland with mail fraud, in violation of 18 U.S.C. § 1341, and with the knowing and willful making of false, fictitious, and fraudulent statements, in violation of 18 U.S.C. § 1001, all relating to his fraudulent certifications that he had performed residential methamphetamine remediation. (*United States v. McCasland*, 1:13-cr-10069-JDB-1 (W.D.

---

[1] Unless otherwise noted, record citations in this order are to Case No. 1:15-cv-02700-JDB-egb.

Tenn.), D.E. 2.) Throughout the case, the Defendant[2] was represented by attorney William Joshua Morrow. Counsel was initially retained by McCasland (*id.*, D.E. 4), but was later appointed by the Court due to the Defendant's indigency (*id.*, D.E. 18).

In July 2014, the inmate pleaded guilty to a single count of making a false statement (*id.*, D.E. 33) pursuant to a written agreement with the Government (*id.*, D.E. 34). By the terms of the agreement, the Defendant waived his right to appeal and to collaterally attack his conviction and sentence and stipulated that he "underst[ood] and agree[d] that the Court w[ould] make the final determination of facts as to any sentence and as to any mitigating or aggravating factors concerning the sentence to be imposed." (*Id.*, D.E. 34 at PageID 84-85.) The document also provided that the parties would "recommend to the Court that the appropriate sentence in this case shall not exceed eighteen (18) months of imprisonment" and that "the Government w[ould] not oppose the defendant's request that he be allowed to serve this period via probation combined with home detention." (*Id.*, D.E. 34 at PageID 83.) The Government agreed to dismiss the remaining twelve counts.

The presentence report calculated an advisory imprisonment range of eighteen to twenty-four months under the United States Sentencing Commission Guideline Manual ("Sentencing Guidelines," "Guidelines," or "U.S.S.G."). (Presentence Report at ¶ 90.) The range reflected a reduction in the Defendant's offense level for his acceptance of responsibility. (*Id.* at ¶¶ 50-51.) On December 15, 2014, the Court sentenced McCasland to six months of imprisonment, to be served concurrently with any state sentences relating to conduct that was the subject of the federal

---

[2]In discussing the underlying criminal case, the Court will refer to McCasland as the "Defendant."

offense, and three years of supervised release. (No. 1:13-cr-10069-JDB-1, D.E. 45, 47, 58.) The Defendant appealed his sentence, arguing that his guilty plea was unknowing and involuntary. (*Id.*, D.E. 71.) The Sixth Circuit Court of Appeals dismissed the appeal, finding that the Defendant voluntarily and knowing waived his right to appeal. (*Id.*, D.E. 71.)

On October 26, 2015, the inmate filed his Petition (D.E. 1) and a supporting memorandum (D.E. 1-1), in which he asserts that his guilty plea was unknowing and involuntary due to defense counsel's ineffective assistance and, therefore, his conviction should be set aside. Respondent, the United States of America, filed a response to the Petition (D.E. 12), as well as an affidavit from defense counsel (D.E. 12-1). Petitioner did not file a reply, although he was allowed to do so. (*See* D.E. 8.)

DISCUSSION

Petitioner challenges his guilty plea on the ground that it was "directly and solely induced by the fraudulent misrepresentation[] of Trial Counsel" that the Court would impose a probationary sentence and by counsel's "steadfast refusal to investigate [his] case" once the prisoner became unable to pay for counsel's services. (D.E. 1-1 at PageID 19-20, 24.) He insists that he "continually provided witnesses for his attorney to speak to in defense of his case," but that counsel "refused to speak to these individuals." (*Id.* at PageID 23.) He alleges that "[w]hen [he] pointed out inconsistencies in the discovery and asked Trial Counsel to look into the training provided by and to employees of the Department of Remediation, Trial Counsel replied that Mr. McCasland could not afford to go to trial, and that Trial Counsel was incapable of digesting all the discovery." (*Id.*) The inmate further submits that counsel told him "that the only way he could avoid prison time was to plead guilty to the charges against him." (*Id.*)

3

The Government maintains that the claim is not properly before the Court because the Petitioner waived his right to bring a § 2255 petition. Respondent also contends the claim is without merit, as evidenced by the record in McCasland's criminal case and by counsel's specific averments regarding his efforts to investigate the matter.

In his affidavit, attorney Morrow attests that he "never 'insisted' that Mr. McCasland resolve his case through plea negotiations or via a plea agreement" and "never advised [him] that if he entered a guilty plea, he would 'definitely avoid incarceration.'" (D.E. 12-1 at ¶¶ 18, 20.) Counsel states that he "discussed the applicability of the United States Sentencing Guidelines with Mr. McCasland on several occasions," "advised [him] that the Sentencing Guidelines are advisory," and explained to him "many times that, although the government agreed not to oppose [his] request for probation or home detention, the Court was free to impose a sentence of imprisonment." (*Id.* at ¶ 20.) He attests that he "specifically advised Mr. McCasland on multiple occasions that the government would not enter into a binding plea agreement to a non-custodial sentence, and [that] it would ultimately be up to the Court to decide whether to impose a custodial or non-custodial sentence." (*Id.* at ¶ 25.) Counsel submits that he fully investigated the case and did not change his litigation strategy once Petitioner was declared indigent. (*Id.* at ¶¶ 12-13, 18-19, 23-24.)

A prisoner seeking to vacate his sentence under § 2255 "must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing

4

to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving his entitlement to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Prejudice is established where

there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[3]  *Id.* at 694.

*Strickland*'s two-part test applies to a claim that counsel was ineffective at the plea stage of the criminal proceedings. *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A petitioner demonstrates prejudice in the plea context by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *id.* at 59, or that, had he been properly advised by counsel during the plea negotiations, he "would have bargained for a more favorable plea," *Rodriguez-Penton*, 905 F.3d at 488.

A defendant's waiver of his right to collaterally attack his conviction and sentence pursuant to § 2255 is enforceable if entered into "knowingly, intelligently, and voluntarily." *Davila v.*

---

[3]Motions under § 2255 can only be brought by a federal prisoner who is "in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255. McCasland was released from prison on August 4, 2015, and at that point began a three-year term of supervised release. Thus, he was on supervised release when he filed the Petition on October 26, 2015, and has met § 2255's "in custody" requirement. *See United States v. Zack,* No. 98-1526, 1999 WL 96996, at *1 (6th Cir. Feb. 1, 1999) ("A defendant serving a term of supervised release is 'in custody' for the purposes of § 2255."). And, although Petitioner's supervised release has ended, his case is not moot. *See id*. (citing *Carafas v. LaVallee,* 391 U.S. 234, 238 (1968)) (holding petitioner's release from custody did not moot his case "because [he] was in custody at the time the petition was filed").

*United States*, 258 F.3d 448, 451 (6th Cir. 2001). A defendant may thus challenge the voluntariness of his plea and waiver in a § 2255 proceeding. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (a waiver of § 2255 rights cannot foreclose evaluation of an argument that the guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel.)

Accordingly, to prevail on the both the waiver issue and his ineffective assistance claim, McCasland must demonstrate that his plea was unknowing and involuntary. He has not met his burden.

To begin with, the Sixth Circuit has already rejected his assertion. In his direct appeal, the Defendant argued that his guilty plea was involuntary because he entered into it believing he would receive a sentence of probation and that the Court did not tell him at the plea hearing it could impose a sentence of incarceration. (No. 1:13-cr-10069-JDB-1, D.E. 71.) The appellate court found the allegation was belied by the record:

> Critical here, there was no agreement between the parties to recommend probation. Instead, the parties agreed to recommend that McCasland's sentence not exceed eighteen months, and the government agreed not to oppose McCasland's request for probation. The government's counsel set forth this agreement in full at the hearing, and McCasland stated that he understood it. The district court also informed McCasland about the sentencing process, noting that the district court ultimately determined the sentence.

(*Id.*, D.E. 71 at PageID 287.)

There is little to add to the Sixth Circuit's findings regarding the record in Petitioner's criminal case, except to point out several other aspects of his testimony that undermine his claim. When this Court informed him at the plea hearing of the statutory maximum for the offense and asked him if he understood, he answered "Yes." (No. 1:13-cr-10069-JDB-1, D.E. 67 at PageID 262.) He also answered in the affirmative when asked whether he voluntarily signed the plea

7

agreement. (*Id.*, D.E. 67 at PageID 264.) The Government reviewed the terms of the plea agreement in open court, including the collateral rights waiver, and the Defendant stated that he understood and agreed to those terms. (*Id.*, D.E. 67 at PageID 264-69.) Petitioner's sworn testimony is presumed to be truthful and is, therefore, a "formidable barrier" to collateral relief. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

To the extent the inmate insists, despite his testimony, that his plea was induced by counsel's alleged promise that he would receive probation in exchange for his guilty plea, the Court cured any misunderstanding on that issue. *See Cadavid-Yepes v. United States*, 635 F. App'x 291, 299-300 (6th Cir. 2016) (quoting *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999)) (the "proper plea colloquy 'cure[d] any misunderstanding [petitioner] may have had about the consequences of his plea.'"). Counsel's alleged promise of a probationary sentence thus cannot be said to have caused Petitioner to plead guilty.

McCasland's additional assertion that his plea was prompted in part by his attorney's refusal to investigate his case also fails, as the underlying allegation of deficient performance by counsel is merely conclusory and not supported by specific facts. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) (where "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 petition is "legally insufficient to sustain a review"); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim"). Petitioner does not identify the witnesses counsel allegedly failed to interview, what their testimonies would have been, and what an inquiry into the "training provided by and to employees of the Department of Remediation" would have yielded.

In contrast, counsel has attested specifically to his investigative efforts:

> [I]n Mr. McCasland's case, all discovery received from the government (which was not subject to any discovery protective orders entered by the Court) was either provided to Mr. McCasland, or made available for his review in [counsel's] office. [Counsel] also personally met and reviewed several pertinent items of discovery with Mr. McCasland on multiple occasions. After being informed about the state charges filed against Mr. McCasland in several counties in Tennessee, [counsel] conducted a detailed investigation into those charges, including meeting and speaking with Mr. McCasland's state court counsel many times, and requesting and reviewing several documents pertaining to the state charges.
>
> * * *
>
> During . . . meetings and consultations [with the Defendant], all matters relating to the case, including suppression issues, potential state and federal trial issues, potential witness issues, potential issues regarding evidence to be used at trial and his sentencing hearing, applicable levels under the Sentencing Guidelines, and the possibility of appeal and/or waiver of appellate rights, were all discussed in very great detail. Mr. McCasland instructed counsel what to look for, what to investigate, etc., from time-to-time.
>
> * * *
>
> [Counsel] does not recall ever refusing to call or speak to any individuals, whose identity was provided by Mr. McCasland, who potentially had information that was relevant to the issues in the case.
>
> * * *
>
> The government did produce a voluminous amount of discovery, and the case involved a novel area of the law. However, [counsel] reviewed the discovery material and the applicable law in order to become sufficiently familiar with the facts and the law, and based on his review he provided his opinion to Mr. McCasland regarding the likelihood of success of proceeding to trial. Mr. McCasland considered this opinion and decided to enter a guilty plea.

(D.E. 12-1 at ¶¶ 11-12, 22-23.)

Petitioner also offers no support for his conclusory allegation that counsel was motivated to press for a guilty plea and to forego an investigation because his client was indigent. Indeed, as his attorney points out in his affidavit, there was no monetary disincentive in proceeding to trial,

9

"as he was being compensated by the government for representing Mr. McCasland[,] . . . and he would have actually received more compensation if Mr. McCasland had elected to proceed to trial (rather than pleading guilty)." (*Id.* at ¶ 19.)

Although represented by counsel in the instant case, Petitioner has not supported his general allegations with specific factual allegations, his own affidavit, or documentary evidence. Accordingly, there is no basis for his argument that counsel did not investigate his case and that he withheld his services because the inmate was indigent.

For all of these reasons, the Court finds that McCasland's assertion that he did not voluntarily and knowingly plead guilty is belied by the record in his criminal case. He has not overcome his sworn testimony that he voluntarily signed the plea agreement, which contained a waiver of his collateral rights and which did not contain a promise of probation, and that he freely and voluntarily pleaded guilty. His collateral rights waiver is therefore enforceable. For the same reasons, his claim is without merit.

The Petition is DISMISSED.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[4]

IT IS SO ORDERED this 26th day of February 2019.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.